OPINION OF THE COURT
Anil C. Singh, J.
This is a dispute over rates paid to a health care provider by an insurance company. Defendant moves to dismiss plaintiffs unjust enrichment claim pursuant to CPLR 3211 (a) (7), contending that: (1) an equitable claim has no place in the Medicare regulatory scheme; (2) plaintiff is prohibited under state law from bringing a private lawsuit for violation of a statute; and (3) plaintiff conferred no benefit upon defendant. Plaintiff opposes the motion and cross-moves to amend and supplement the complaint pursuant to CPLR 3025 (b). Defendant opposes the cross motion.
Plaintiff New York City Health and Hospitals Corporation (HHC) is a public benefit corporation that operates and maintains the municipal hospitals of New York City (65 NY Jur 2d, Hospitals § 96). It provides medical services through 11 acute care hospitals (www.nyc.gov/html/hhc). HHC is the largest municipal health care organization in the United States (id.).
Defendant WellCare of New York, Inc. (WellCare) is a private insurer authorized under federal law to provide benefits to Medicare recipients. WellCare has a contract with the Federal Centers for Medicare & Medicaid Services (CMS) to provide services to Medicare enrollees. Defendant is licensed under article 44 of the Public Health Law to administer a Medicare Advantage (MA) plan.
CMS is the federal agency responsible for implementation of the MA program (www.cms.gov). Medicare Advantage plans *204 (like HMOs) are health plans run by Medicare-approved private insurance companies (www.medicare.gov/publications/pubs/pdf/ 11034.pdf). “Medicare Advantage plans (also called ‘Part C’) include Part A [Hospital Insurance], Part B [Medical Insurance], and usually other coverage like Medicare prescription drug coverage (Part D)” (id.). Under Medicare Advantage, managed care organizations, such as WellCare, must reimburse out-of-network health care providers, such as HHC, for services rendered to MA enrollees.
MA organizations typically enter into agreements with health care providers (contracted providers) in order to provide services to their enrollees. Providers that do not have a contract with the MA organization are noncontracted providers.
Neither HHC nor any of the HHC hospitals have a contract with WellCare, so they are noncontracted providers.
MA organizations may require that Medicare enrollees receive their Medicare benefits through contracted providers, but they must allow enrollees to obtain emergency medical services “without regard to . . . the emergency care provider’s contractual relationship with the [MA] organization” (42 USC § 1395w-22 [d] [1] [E]; 42 CFR 422.113).
Under the Federal Emergency Medical Treatment and Active Labor Act (EMTALA) (42 USC § 1395dd), any hospital that accepts payment from Medicare must treat patients who seek emergency services without inquiry into the patient’s insurance coverage or ability to pay until the patient’s condition has been stabilized.
Under the federal statute, Medicare provider hospitals— including those operated by plaintiff HHC — are compelled to provide treatment and stabilization for any patients who arrive at their emergency rooms (see for example Carodenuto v New York City Health & Hosps. Corp., 156 Misc 2d 361 [Sup Ct, Bronx County 1992]). The statute provides for a civil monetary penalty against a hospital for a violation of EMTALA (id.). “In addition, an individual who suffers personal harm may maintain a civil action against the participating hospital” (Almond v Town of Massena, 237 AD2d 94, 96 [3d Dept 1998]).
MA organizations are responsible for paying providers, whether contracted providers or noncontract providers, for services provided to stabilize an emergency condition (42 CFR 422.113).
Noncontracted providers that provide services to enrollees of a MA organization do not receive any payments from CMS for *205 those services. An MA organization must pay noncontracted providers that provide emergency services to Medicare enrollees the “amount the provider would have received under original Medicare” (42 CFR 422.100 [b] [2]).
Medicare law requires that noncontracted providers accept the amount that they would receive through original Medicare as payment for services provided to Medicare enrollees of a Medicare Advantage plan (42 USC § 1395cc [a] [1] [O]; § 1395w-22 [k] [1]; 42 CFR 422.214 [b]).
HHC filed a verified amended complaint in the Supreme Court in September 2010. The complaint alleges that HHC hospitals provided emergency services to WellCare’s Medicare enrollees, fulfilling WellCare’s obligation to ensure that its enrollees received such services. Plaintiff alleges further that, as a result, WellCare had a duty to pay for those services, with its own funds, and has been unjustly enriched by its calculated underpayment. Plaintiff contends that it seeks only the amount it expected to be paid — and the amount it billed WellCare — even if the factfinder finds that the reasonable value of HHC’s services is higher.
The amended complaint asserts two causes of action: (1) breach of contract, and (2) unjust enrichment.
On September 10, 2010, WellCare removed this action from state court to the United States District Court, Southern District of New York.
WellCare moved to dismiss both claims on the grounds that: (1) HHC’s claims were preempted by federal law; (2) HHC’s claims represented an impermissible attempt to enforce a federal law that does not provide for a private right of action; and (3) both claims failed as a matter of law.
In an opinion and order dated May 10, 2011, the federal court granted WellCare’s motion to dismiss as to the breach of contract claim. The unjust enrichment claim was remanded to this court.
Defendant is moving now to dismiss the unjust enrichment claim and the complaint pursuant to CPLR 3211 (a) (7). Plaintiff is cross-moving to have the amended complaint reflect the “viable” claim before this court.
Discussion
“It is well settled that a motion to dismiss a complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7) must be denied if from the pleadings’ four corners factual al *206 legations are discerned which taken together manifest any cause of action cognizable at law” (Maldonado v Olympia Mech. Piping & Heating Corp., 8 AD3d 348, 349-350 [2d Dept 2004] [internal quotation marks and citations omitted]). “[T]he court must accept as true the facts alleged in the pleading and submissions in opposition to the motion, and accord the plaintiff the benefit of every possible favorable inference” (id. at 350).
“A person is enriched if he or she has received a benefit” (22A NY Jur 2d, Contracts § 528). “To state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor” (Smith v Chase Manhattan Bank, USA, 293 AD2d 598, 600 [2d Dept 2002], quoting Nakamura v Fujii, 253 AD2d 387, 390 [1st Dept 1998]). “Whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction; it must be a realistic determination based on a broad view of the human setting involved” (22A NY Jur 2d, Contracts § 528).
This is an apparent case of first impression in the State of New York. “New York law is in accordance with the general rule which requires unjust enrichment and a benefit conferred upon the recipient by the claimant as prerequisites for the enforcement of restitution” (22A NY Jur 2d, Contracts § 527, citing Am Jur 2d, Restitution and Implied Contracts §§ 8, 10, 15). Because the law of New York with respect to unjust enrichment is in agreement with the law of our sister states, we will examine analogous decisions in three other states for guidance.
Courts in Pennsylvania, Tennessee and Texas have permitted an equitable remedy under similar circumstances because the hospitals were required to provide services to the enrollees.
For example, in Temple Univ. Hosp., Inc. v Healthcare Mgt. Alternatives, Inc. (832 A2d 501 [Pa Super 2003]), a teaching hospital, which had entered into a contractual agreement with a managed care company to provide services to certain Medicare recipients, commenced an action to recover the difference between published charges and the lesser amount actually paid by the managed care company.
The Superior Court of Pennsylvania found that all of the elements of unjust enrichment were present. It wrote:
“We believe the circumstances herein compel a finding that unjust enrichment has occurred. In reaching this conclusion, we note that the Hospital was *207 compelled, under federal law to provide services to individuals under the HealthPass program; conversely, Healthcare [the managed care company] did not have the ability to prevent its members from seeking emergency treatment at the Hospital. As a result, the parties virtually were compelled to operate in this manner; equitable principles are therefore particularly appropriate to apply.
“Healthcare maintains that it adequately compensated the Hospital for services provided .... We disagree. Dr. Dobson testified that Medicaid covered only eighty to eighty-three percent of the costs incurred by hospitals that treat indigent patients.
Thus, Healthcare retained a benefit in this instance because it did not pay reasonable value for the services rendered. Accordingly, we find that all of the elements of unjust enrichment were established, and that Healthcare’s payment of two million dollars did not render the doctrine inapplicable. If we adopted Healthcare’s position, entities like Healthcare could pay a fraction of the value of the benefit supplied by health care providers who treat Medicaid recipients and successfully argue that the doctrine of unjust enrichment was not applicable. The very thought of permitting such a result is absurd; payment of less than actual costs in [sic] unreasonable and[,] thus, inequitable.” (Temple Univ. Hosp., 832 A2d at 507-508 [citation omitted].)
The Pennsylvania court cited the decision of the Court of Appeals of Tennessee in River Park Hosp., Inc. v BlueCross BlueShield of Tennessee, Inc. (173 SW3d 43 [Tenn Ct App 2002]).
River Park involved a dispute over rates paid to a health care provider/hospital by a managed care organization (MCO). After the hospital’s contract with the MCO expired, the hospital continued to provide emergency services to the MCO’s enrollees, as it was required to do under federal law. For those emergency services, the hospital billed the MCO at its full, standard rates. The MCO refused to pay the hospital’s standard rates, and instead paid the hospital the same rate it had paid under the parties’ expired contract.
Noting that under EMTALA, a hospital must provide emergency services to any patient without regard to insurance, the court held that the MCO was unjustly enriched by the hospital’s *208 provision of services to the MCO’s enrollees. The court wrote that the terms
“ ‘unjust enrichment’ and ‘contract implied in law’ are used virtually interchangeably. In this case, both parties were required to deal with one another; neither had any choice. When presented with an emergency patient, either through the emergency room or through admission by a PCP [primary care physician], under the EMTALA, [the hospital] has no choice except to treat the patient, regardless of whether the patient is a BlueCare [MCO] enrollee. Likewise, under its risk agreement with the State, BlueCare is required to pay for emergency medical services for its enrollees, whether the services are provided by an in-network provider or by an out-of-network provider such as [the hospital] . . .
“Under these circumstances, we must find a contract implied in law, without the assent of either party, on the basis that it is dictated by reason and justice.” (River Park Hosp., 173 SW3d at 59-60 [internal quotation marks and citations omitted].)
The Texas case that we will examine is El Paso Healthcare Sys., Ltd. v Molina Healthcare of N.M., Inc. (683 F Supp 2d 454 [WD Tex 2010]).
In El Paso, a health care provider, which owned two hospitals, brought an action against an insurance company which provided managed care organization health coverage to certain New Mexico Medicaid beneficiaries, alleging underpayment for emergency services rendered by the hospitals to the Medicaid beneficiaries.
The Texas court held that the health care provider had satisfied the test for quantum meruit, stating:
“The four prongs of quantum meruit are: (1) that valuable services were rendered; (2) for the person sought to be charged; (3) which were accepted, used and enjoyed by that person; (4) under circumstances that reasonably notified that person that the provider was expecting to be paid by that person
“Molina [the insurer] argues that the medical services were provided to, and accepted by, the patients — not Molina. This, Molina argues, defeats the elements of the services being provided ‘for the person charged,’ and acceptance or enjoyment by *209 the person charged. While it is true that the immediate beneficiaries of the medical services were the patients, and not Molina, that company did receive the benefit of having its obligations to its plan members, and to the state in the interests of plan members, discharged. Molina describes this discharging-of-obligations benefit as ‘incidental,’ but the Court finds this benefit material, due to the aforementioned obligations. Indeed, Molina’s very reason for existence is to ensure that such services are provided to plan members; seeing this core obligation fulfilled is hardly incidental ... If these obligations are not deemed material and central to the Medicaid managed care scheme, how is such a system supposed to function? In sum, these discharges were furnished for the benefit of Molina, which enjoyed them and accepted them, and Molina even acknowledged as much when it tendered payment for them at a rate it deemed to be proper.” (El Paso, 683 F Supp 2d at 461-462 [citations omitted].)
The three decisions from our sister states are variations on a basic theme — namely, that where, as here, a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer’s enrollees.
WellCare contends that HHC has failed to state a claim for unjust enrichment as a matter of New York law. According to WellCare, HHC performed no services at WellCare’s request, nor did HHC confer any direct benefit on WellCare. In support of its position, WellCare cites Pekler v Health Ins. Plan of Greater N.Y. (67 AD3d 758 [2d Dept 2009]), and Kirell v Vytra Health Plans Long Is., Inc. (29 AD3d 638 [2d Dept 2006]).
In the instant matter, HHC contends that the physicians in its emergency rooms were required by law to provide medical services to WellCare’s enrollees. By contrast, the complaint in the Pekler case alleged that medical services were performed by the plaintiff doctors voluntarily at the behest of their patients, so that no claim in quantum meruit could be asserted against the defendant health insurance plan (Pekler, 67 AD3d at 760). The instant matter is, therefore, distinguishable.
Likewise, the court in Kirell held that no claim could be asserted against the defendant health insurer because the plaintiff podiatrist’s services were performed at the behest of the *210 patients/enrollees. Unlike the present case, the medical services in Kirell were not compelled by the existence of a medical emergency.
The concept of “unjust enrichment” has been summarized as follows:
“The term ‘unjust enrichment’ does not signify a single well-defined cause of action. It is a general principle, underlying various legal doctrines and remedies.
“It is used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account for the property or benefits.
“An action to recover on the theory of unjust enrichment is based on the equitable principle that a person must not be allowed to enrich himself or herself unjustly at the expense of another.
“A claim for unjust enrichment does not require that the party enriched take an active role in obtaining the benefit.” (22A NY Jur 2d Contracts § 523.)
After careful consideration, the court finds that the facts alleged in the instant action are clearly sufficient to state a cause of action for unjust enrichment.
Finally, we turn to the cross motion for leave to amend and supplement the complaint pursuant to CPLR 3025 (b).
CPLR 3025 (b) provides that
“A party may amend his or her pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances.”
The court finds that defendant will not suffer undue prejudice or surprise if plaintiff is permitted to amend the complaint.
Accordingly, it is hereby ordered that defendant’s motion to dismiss the complaint is denied, and it is further ordered that plaintiff’s motion for leave to amend the complaint is granted, and the proposed second amended and supplemental complaint in the proposed form annexed to the cross-moving papers shall be deemed served upon service of a copy of this *211 order with notice of entry thereof; and it is further ordered that the defendant shall serve an answer to the second amended and supplemental complaint or otherwise respond thereto within 20 days from the date of said service.